IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARION ROBINSON, JR.,                  §
        *Petitioner*,                        §
                           §
v.                                     §        Civil Action No. H-08-0824
                           §
NATHANIEL QUARTERMAN,                   §
        *Respondent*.                       §

## MEMORANDUM OPINION AND ORDER

Marion Robinson, Jr., a state inmate proceeding *pro se*, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging his state felony conviction for aggravated robbery. Respondent filed a motion for summary judgment (Docket Entry No. 13), to which petitioner filed a response and a counter-motion for summary judgment (Docket Entries No. 16, 17).

Based on consideration of the pleadings, the motions and response, the record, and the applicable law, the Court **GRANTS** respondent's motion for summary judgment, **DENIES** petitioner's motion for summary judgment, and **DISMISSES** this case with prejudice.

## I.  PROCEDURAL BACKGROUND AND CLAIMS

The jury found petitioner guilty of aggravated robbery and assessed a life sentence as punishment. The conviction was affirmed on appeal. *Robinson v. State*, No. 14-05-00334-CR (Tex. App. – Houston [14th Dist.] 2006, pet. ref'd) (not designated for publication). The Texas Court of Criminal Appeals refused discretionary review and denied petitioner's state

habeas application without a written order on the findings of the trial court, without a hearing. *Ex parte Robinson*, No. 67,632-02.

Petitioner raises the following grounds for federal habeas relief:

 (1)  insufficient evidence;

 (2)  ineffective assistance of trial counsel in

    (a)  failing to object;

    (b)  failing to request a limiting instruction;

    (c)  failing to file pretrial motions; and

    (d)  failing to investigate;

 (3)  denial of his confrontation rights;

 (4)  prosecutorial misconduct;

 (5)  a *Brady* violation; and

 (6)  ineffective assistance of appellate counsel.

Both parties move for summary judgment on these issues.

## II.  FACTUAL BACKGROUND

The state court of appeals set out the following statement of facts in its opinion:

On Friday, June 18, 2004, complainant Margaret Meremikwu was robbed at gunpoint in the parking garage of Riverside Hospital, where she worked as a nurse.  During the robbery, the perpetrator shot Meremikwu in the face, causing extensive permanent injuries.

Meremikwu testified that around 6:00 p.m. on June 18, she drove her maroon van to the bank with fellow nurse Bernadine Ike to cash their paychecks.

2

When she returned to the parking garage, Meremikwu noticed two men on the sidewalk wearing 'jacketed hood[s]'; Meremikwu thought this was strange because the coats were thick and it was summer.  According to Meremikwu, the taller man held a long object in his hand, which Meremikwu soon realized was a gun, while the shorter man carried a shorter gun.  Meremikwu testified that she saw the men's faces when they approached the passenger's side of her van.  The men tried to open the van doors, but they were locked.  Meremikwu testified that the taller man with the long gun then fired at the rear sliding door, shooting her in the mouth, face, neck, and shoulder.  Before she lost consciousness, Meremikwu heard the men demanding: 'Give me the money.'  While she was in the hospital, Meremikwu picked appellant out of a photo spread and also identified him in court as the shooter.  Although Meremikwu could not remember whether appellant, who was wearing glasses at trial, was wearing glasses on June 18, she testified that she was 'a hundred percent' sure that appellant was the shooter because she had clearly seen the men's faces.  On cross-examination, Meremikwu testified that she had hired a civil attorney and planned to sue the hospital and possibly appellant for her injuries.

Bernadine Ike, who corroborated Meremikwu's account of the robbery, explained that the nurses routinely cashed their paychecks every other Friday.  Ike testified that as she and Meremikwu returned from the bank on June 18, she saw two men wearing dark winter coats with the hoods pulled up.  Ike also noticed that one man was taller than the other.  Ike testified that as Meremikwu was repositioning her van in the parking space, the two men rushed up to the passenger's side of the vehicle.  According to Ike, each man carried a gun, and one gun was black.  Ike fell to the floor of the van when the shot was fired and testified that she did not get a good look at the men's faces.  On cross-examination, Ike testified that the police never asked her to pick suspects from a photo line-up.

Jennifer Jones, whose husband was a patient at the hospital, was parked next to Meremikwu's van on June 18.  Jones testified that as she was getting into her car, she heard voices yelling that they would shoot a woman if she locked the door.  Jones testified that she saw two men at the van and that the taller man was wielding a long, exaggerated pistol.  Jones described the man with the gun as 'a black male with a hood over a shirt' wearing shorts and white tennis shoes or socks.  Jones dropped to the ground when she heard the gunshot and testified on cross-examination that she was unsure which man fired the gun.  She was also unsure whether one or both men had worn hoods

3

but stated that they were African-American when defense counsel asked about their complexions. Jones further testified that the police never asked her to pick out suspects from a lineup or photos and that the hospital was in a high-crime area.

Ellis Henderson, who used to work at the hospital, was also in the parking garage on June 18. Henderson testified that he heard a gunshot and saw two men near a maroon van. According to Henderson, the shorter man wore dark shorts and carried a handgun. Henderson stated that the taller man wore a jacket with the hood pulled up and carried an object that resembled an umbrella or a weapon larger than a handgun. Henderson testified that he saw the men only 'vaguely' and did not see their faces. On cross-examination, Henderson testified that the shorter man was wearing a dark shirt and shorts but no hood.

Patricia Merritt, who also worked at the hospital, testified that it was common knowledge that the hospital employees routinely took their paychecks to a nearby bank on paydays. Merritt testified that on June 18, she was returning from the bank when she saw two men on the sidewalk. Merritt thought that the taller man was carrying an umbrella, but one of the other nurses with Merritt thought the object was a gun. Merritt also testified that the 'umbrella' had a black handle like a gun. Merritt testified that the taller man wore 'a hooded jacket and shorts.' Merritt testified that the men pulled the hoods up and that she did not get a good look at their faces before she heard a gunshot. On cross-examination, Merritt admitted that she could not identify the men's eye or hair color or their weight. She also stated that the police had never asked her to identify suspects in a line-up or photo spread and was unsure if one of those men actually had fired the shot.

Appellant's ex-girlfriend Tandra Gross, who also worked at the hospital, testified that she received a phone call from appellant around the time of the shooting. She also identified appellant as her ex-boyfriend in a photo array and in court but stated that she had not witnessed the robbery. On cross-examination, Gross testified that she could not say anything bad about appellant.

Officer Michael Dunn of the Houston Police Department, who had secured the crime scene on June 18, testified that he had guarded evidence at the scene but had not spoken to any witnesses. On cross-examination, Dunn acknowledged

that he neither saw nor obtained a description of any possible suspects. He also testified that he had never met appellant.

Officer Jonathan Halliday of the Houston Police Department testified that he arrived at the scene to protect a jacket found near the hospital until the Crime Scene Unit could collect it. On cross-examination, Halliday testified that he did not know who owned the jacket or who had discarded it. He also stated that he had not conducted DNA testing on the jacket.

Officer Patrick Hernandez of the Houston Police Department testified that when he arrived at the scene, police had discovered a shotgun hidden in a tree. After securing the surrounding area, Hernandez placed his jacket over the gun to protect it from the rain and preserve any fingerprints. On cross-examination, Hernandez testified that he did not investigate any suspects.

Officer James Kay, a crime scene investigator for the Houston Police Department, photographed and collected evidence from the robbery scene, including the jacket and the shotgun found near the hospital. Kay also collected a second sweatshirt, an umbrella, a stocking, and a pair of sunglasses. He testified that it was very rare to retrieve identifiable fingerprints. On cross-examination, Kay acknowledged that fingerprints were found on the sunglasses, but he did not know if they matched appellant's. He stated that he did not know who the evidence belonged to or whether the stocking had been used in the robbery to conceal the perpetrator's face. Kay admitted that officers often find fingerprints that solve crimes and that he had not seen any suspects in the case. On redirect examination, Kay explained the difficulties in obtaining quality fingerprints, especially from a gun trigger. On re-cross-examination, Kay testified that he found nothing at the scene that could have been used to conceal fingerprints, except perhaps the stocking. He stated that a person carrying a gun while fleeing a crime scene could leave a fingerprint. Officer Norman Kiesewetter of the Houston Police Department inspected Meremikwu's minivan and lifted two latent fingerprints. On cross-examination, Kiesewetter testified that he did not process the van until seven days after the robbery and did not know how many people had been in the van in the interim. He also did not know how many suspects were under investigation.

Officer Raphael Saldivar of the Houston Police Department conducted the fingerprint analysis. Saldivar testified that the fingerprint found on the

sunglasses did not belong to appellant. The fingerprints lifted from the other pieces of evidence were not identifiable. On cross-examination, Saldivar admitted that 'if there was any way . . . to connect these prints to Mr. Robinson, [he] would have done that.' He stated that he was one-hundred percent sure that the fingerprint found on the sunglasses did not belong to appellant. Saldivar stated that because the fingerprints lifted from the van door were not identifiable, they could not be connected to anyone. Saldivar testified that he compared the fingerprints only to appellant's but explained that if he had other suspects' fingerprints, he could attempt to compare them with those found on the evidence.

Darryl Stein, a firearms inspector with the Houston Police Department, inspected the gun found at the scene. On cross-examination, Stein confirmed that the gun was not loaded and admitted that he did not know how long the gun had been nonoperational.

Over defense counsel's objection, and for the sole purpose of proving identity, the trial court allowed the State to present evidence that appellant had committed an aggravated robbery two weeks before Meremikwu was robbed. Psychiatric nurse Donna Edwards, who also used to work at Riverside Hospital, testified that on Friday, June 4, 2004, appellant robbed her in the same area of the parking garage where Meremikwu was shot. Edwards stated that she was leaving the hospital about 11:00 p.m. with a security guard when she noticed a man following her. When she turned around, the man pointed a silver, squarish pistol at her and demanded that she give him her purse. Edwards testified that the man was wearing a blue hooded sweatshirt with the hood down, jeans, and a wool cap. She also stated that she saw the man's face clearly, particularly his eyes, and that he was not wearing glasses. According to Edwards, the man was screaming 'Where is the money?' and was waving the gun in a crazed manner. Edwards also stated that when the security guard tried to approach, the man threatened to shoot him; however, when Edwards gave the man her purse, he grew calm and then ran down the street. Edwards identified appellant in a photo spread and in court as the man who had robbed her that night and stated that she was positive about her identification.

*Robinson*, pp. 1-3.

### III.   THE APPLICABLE LEGAL STANDARDS

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that is materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent.  *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409.  In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable.  *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a

7

factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

## IV.  INSUFFICIENCY OF THE EVIDENCE

Petitioner argues that the evidence is legally and factually insufficient to support his conviction. On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). Under Fifth Circuit authority, a state may impose a more exacting standard for determining the sufficiency of the evidence, but a federal court must review section 2254 challenges to the sufficiency of the evidence under the *Jackson* standard. *West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996). This standard requires that the reviewing court determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. In short, this Court may conduct only a legal sufficiency review, and then, only within the limitations of AEDPA.

In conducting that review, a federal habeas court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict. *Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995). The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, as long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997). To determine whether the evidence is sufficient to support a state criminal conviction, a federal habeas court looks to state law for the substantive elements of the relevant criminal offense. *Jackson*, 443 U.S. at 324 n.16; *Dupuy v. Cain*, 201 F.3d 582, 589 (5th Cir. 2000).

Petitioner did not challenge the sufficiency of the evidence on direct appeal. The trial court rejected petitioner's evidentiary challenge on collateral review, and found that, "Applicant's challenge to the sufficiency of the evidence need not be considered on habeas since Applicant waived this claim by failing to challenge the sufficiency of the evidence on direct appeal." *Ex parte Robinson*, p. 127. The Texas Court of Criminal Appeals relied on this finding in denying habeas relief. *Id.*, at cover. Accordingly, this issue has been procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Federal habeas relief will not be granted on a procedurally defaulted claim unless a petitioner can demonstrate both good cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a

9

fundamental miscarriage of justice in that he is actually innocent of the offense. Petitioner satisfies none of these requirements, and the Court is barred from consideration of his claim for insufficiency of the evidence. *See Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997).

Even assuming the issue were not procedurally foreclosed, the state court of appeals' findings as set forth in its opinions provide legally sufficient evidence to deny petitioner's sufficiency challenge. Further, this Court has independently reviewed the state court record and finds the evidence sufficient to deny petitioner's legal sufficiency challenge. Under Texas state law, a person commits the offense of aggravated robbery if, in the course of committing theft and with intent to obtain and maintain control of property, that person knowingly or intentionally threatens or places another in fear of imminent bodily injury or death and uses or exhibits a deadly weapon. TEX. PENAL CODE §§ 29.02(a)(2), 29.03(a)(2). An individual does not have to successfully commit theft in order to commit robbery. *See Crawford v. State*, 889 S.W.2d 582, 584 (Tex. App – Houston [14th Dist.] 1994, no pet.). The complainant in the instant case testified that petitioner fired a "long gun" at her car door, shooting her in the mouth, face, neck, and shoulder, and demanded her money. She had a clear view of his face during the incident, and positively identified him at trial as her assailant. After viewing the evidence in the light most favorable to the prosecution, this Court concludes that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

Habeas relief is unwarranted, and respondent is entitled to summary judgment dismissing this issue.

## V.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if

11

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner raises four instances of ineffective assistance of trial counsel, each of which is discussed separately, below.

A.    Failure to Object

Petitioner claims that trial counsel failed to object to evidence of the extraneous offense, photographs of the complainant's injuries, and the alleged denial of petitioner's confrontation rights regarding two individuals, Michael Sanders and "Paulette." These arguments have no factual support in the record.

Trial counsel objected to the extraneous offense evidence, S.F., Vol. 4, pp. 108-111, and his objections to admission of the evidence formed the basis for petitioner's direct appeal. The state court of appeals upheld the admission of the evidence and affirmed the conviction. To any extent petitioner claims counsel failed to object to the evidence under

Texas Rules of Evidence Rule 403, he fails to provide this Court with legal authority showing that the trial court would have granted the objection. Ineffective assistance of trial counsel under *Strickland* is not shown.

Trial counsel also objected to the photographs. S.F., Vol. 6, pp. 6, 18. The trial court rejected petitioner's allegation of ineffective assistance on collateral review, and found that, "Applicant's trial counsel objected outside and in the presence of the jury to the photographs of the complainant's facial wound in accordance with Rule 403 of the Rules of Evidence, and these objections were overruled by the trial court[.]" *Ex parte Robinson*, pp. 127-28. No deficient performance is shown.

Nor does petitioner establish ineffective assistance of trial counsel regarding a denial of his right to confront Michael Sanders and Paulette. This Court determines under Section VI, *infra*, that the record does not reveal a violation of petitioner's constitutional right to confront these two individuals. Accordingly, trial counsel was not deficient in failing to raise a groundless confrontation objection. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

The state courts denied habeas relief on this issue. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that it was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this ground.

13

B.   Failure to Request a Limiting Instruction

Petitioner complains that trial counsel failed to request a limiting instruction as to the

testimony of Donna Edwards.   Edwards was allowed to testify, over defense counsel's

objections, that petitioner had robbed her at gunpoint in the same hospital parking garage the

payday before the instant robbery.  The trial court ruled the evidence admissible for the sole

purpose of proving petitioner's identity.  It is undisputed that defense counsel did not request

a limiting instruction specific to Donna Edwards.

In her affidavit submitted to the trial court on collateral review, trial counsel testified,

in relevant part, as follows:

> I did not ask for a limiting instruction to the testimony of Donna Edwards.  I
> had spent so much time and energy researching the law and arguing to keep
> out her testimony, and making sure the record was covered in that regard I did
> not ask for a limiting instruction.  I argued I had purposefully not cross-
> examined any of the witnesses concerning the issue of Marion Robinson's
> identity, and therefore, under [citation omitted], Donna Edward's testimony
> should not have been allowed.  This was a critical moment in the trial and my
> strategy had been to follow the law, as I read it, and a lengthy exchange
> ensued.  During this exchange and thinking of the implications of Donna
> Edward's testimony being allowed, I neglected to ask for a limiting instruction.

*Ex parte Robinson*, p. 78.

In rejecting petitioner's ineffective assistance of trial counsel claims, the trial court

on collateral review found trial counsel's affidavit testimony "true" and found that, "The

totality of the representation afforded Applicant was sufficient to protect his right to

reasonably effective assistance of counsel in trial and on direct appeal[.]" *Ex parte Robinson*,

pp. 128. The Texas Court of Criminal Appeals relied on these findings in denying habeas relief. *Id.*, at cover.

Although a limiting instruction specific to Edwards's testimony was not requested, the jury was given the following generic extraneous offense limiting instruction:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity . . . *identity* . . . of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment *and for no other purpose*.

Clerk's Record at 47 (emphasis added). This limiting instruction ordered the jury to limit its consideration of any extraneous offense evidence to the listed purposes, including *identity*. This instruction, while not mentioning Edwards by name, effectively limited the jury's consideration of Edwards's extraneous offense testimony to the stated purposes. Given this generic extraneous offense limiting instruction, petitioner cannot, and does not, establish that he was prejudiced by the absence of an extraneous offense limiting instruction specific to Edwards's testimony.

The state courts denied habeas relief on this issue. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that it was an unreasonable determination of the facts based on the evidence

in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this ground.

C.    Failure to File Pretrial Motions

Petitioner alleges that trial counsel failed to file a motion to suppress his "illegal arrest," "false evidence," and items such as the "umbrella, sunglasses, shotgun, sweatshirt, stocking cap, and shotgun shell." (Docket Entry No. 16, p. 24.)

In her affidavit submitted to the trial court on collateral review, trial counsel testified, in relevant part, as follows:

> I did not believe it was necessary or beneficial to file a motion to suppress identification evidence in Marion Robinson's case. I knew, from our investigation of the case, that the majority of the witnesses could not identify [him]. This was very powerful evidence because there were eight witnesses at the scene and only two said they could identify him. It was my trial strategy to try to show bias in Margaret Meremikwu and Donna Edwards's testimony. Margaret Meremikwu had a civil suit pending against the hospital property where she was shot (a fact she admitted at trial). And my strategy was to do everything possible to keep out Donna Edwards's testimony and, if it was not possible, to show that she was cowering to pressure from other employees at the hospital to implicate Marion Robinson.

> *    *    *    *

> I did not believe it was necessary or beneficial to conduct independent scientific testing on the shotgun, shotgun shell, umbrella, sunglasses or fingerprints on the shotgun, and subsequently offer into evidence the results of such testing. It was not necessary or beneficial to do so in regard to any of the aforementioned items because [neither] Marion Robinson's fingerprints nor DNA were found to be present on any of those items by the State. Therefore, without any leads on another suspect, there were no fingerprints or DNA to try to match. Testing just to test would have been futile. And, in regards to those items, there was no link to Marion Robinson which could be

argued from the State's testing alone.  My trial strategy was to continue to illustrate that if none of these items contained his prints or DNA then how could Marion Robinson be the perpetrator?

* * * *

Additionally, Applicant's fingerprints were not found on anything recovered at the scene or the surrounding area.  This fact was highlighted at trial and was strongly argued to suggest someone else was involved in the robbery and shooting.

*Ex parte Robinson*, p. 76-77.

Trial counsel's affidavit makes clear that her trial strategy was to show that, because none of the tangible evidence recovered at the scene or introduced into evidence by the State could be positively linked to petitioner, the complainant had misidentified petitioner and someone else was the perpetrator.  Petitioner does not establish that this was an unreasonable trial strategy.  *See Poindexter v. Quarterman*, 537 F.3d 511, 519 (5th Cir. 2008) (holding that the reviewing court must strongly presume that counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy).

The state courts denied habeas relief on this issue.  Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that it was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this ground.

D.    Failure to Investigate

Petitioner argues that trial counsel failed to investigate two potential witnesses, Mark Saunders and Paulette. (Docket Entry No. 16, pp. 25-26.) In support, he states that trial counsel "lied" in her affidavit when she stated that her investigator had interviewed the witnesses.

In her affidavit submitted to the trial court on collateral review, trial counsel testified, in relevant part, as follows:

> I believed it to be necessary and beneficial to interview the State's witnesses and to review their reports prior to trial. I filed a motion to have private investigator John Castillo appointed to find these witnesses and others which may have benefited Marion Robinson. *John Castillo was able to locate and interview . . . Michael Sanders.* John Castillo interviewed all of these witnesses and I reviewed his reports during preparation of the case prior to trial.
>
> *    *    *    *
>
> I filed a motion in limine specifically to exclude testimony by A.R. Jammer concerning *Michael Sanders and Paulette (I knew through my investigator they did not want to come to Court and the State would try to use their statements anyway).*
>
> In a hearing, outside the presence of the jury, I reiterated the motion in limine regarding Michael Sanders and Paulette before Officer A.R. Jammer took the stand. The [trial judge] sustained every objection concerning hearsay statements made by Michael Sanders or Paulette.

*Ex parte Robinson*, pp. 77-79 (emphasis added).

In rejecting petitioner's ineffective assistance of trial counsel claims, the trial court found trial counsel's affidavit testimony to be "true" and that petitioner was afforded

18

reasonably effective assistance of trial counsel. *Ex parte Robinson*, pp. 127-28. Ineffective assistance claims based upon uncalled witnesses are not favored because the presentation of witness testimony is essentially trial strategy and thus within the trial counsel's domain, and speculation as to what these witnesses would have testified is too uncertain. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Claims of uncalled witnesses should be rejected unless a petitioner demonstrates that the proposed testimony would have been favorable, and that the witness would have testified at trial. *Id.* Petitioner here fails to present probative summary judgment evidence that these two omitted witnesses were available to testify at trial, and that their proposed testimony would have been favorable to the defense. Petitioner further fails to show that trial counsel's decision not to subpoena Sanders for trial was not the product of a reasoned trial strategy under *Strickland*. *See Poindexter*, 537 F.3d at 519. Nor does petitioner demonstrate that, but for counsel's purported failure to investigate these two witnesses, there is a reasonable probability that the result of his trial would have been different. Neither deficient performance nor prejudice is shown.

The state courts denied habeas relief on this issue. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that it was an unreasonable determination of the facts based on the evidence in the record. No basis for habeas relief is shown, and respondent is entitled to summary judgment on this ground.

19

## VI.   DENIAL OF CONFRONTATION RIGHTS

Petitioner claims that he was denied his right to confront witnesses and cross-examination Michael Sanders and Paulette, two individuals who were named in a police report. In rejecting this claim, the state court on collateral review found that, "Trial counsel filed a motion in limine concerning A.J. Jammer's testimony regarding statements made by Michael Sanders and Paulette, and the trial court's (sic) sustained all defense objections to any testimony of hearsay statements made by Michael Sanders or Paulette[.]" *Ex parte Robinson*, p. 128.

The record shows that petitioner was able to cross-examine all of the State's trial witnesses. Michael Sanders and Paulette were not trial witnesses, and through trial counsel's efforts, their out-of-court statements were excluded from evidence. S.F., Vol. 4, pp. 67, 85-86, 90-96. No denial of petitioner's right to confront these two individuals appears in the record.

To the extent petitioner now claims that trial counsel failed to request a continuance to locate and subpoena Michael Sanders and Paulette, trial counsel's affidavit shows that her investigator interviewed Michael Sanders. Petitioner does not show that trial counsel's decision not to subpoena Sanders for trial was not the product of a reasoned trial strategy under *Strickland. See Pondexter*, 537 F.3d at 519. Nor does petitioner show that Sanders and Paulette were available to testify at trial and would have testified favorably for the defense. Any claim of ineffective assistance of trial counsel as to these allegedly omitted

defense witnesses is based on petitioner's own speculation and is not established in the record.

The state courts denied habeas relief under this issue. Petitioner fails to show that the state courts' determination is in conflict with established federal law or is objectively unreasonable, and fails to rebut the presumption of factual correctness with clear and convincing evidence. *See Miller-El*, 537 U.S. at 330-31, 343; 28 U.S.C. §§ 2254(d)(1), (2), (e)(1). No grounds for habeas relief are shown, and respondent is entitled to summary judgment dismissing this issue.

## VII.  PROSECUTORIAL MISCONDUCT

Petitioner asserts that the State's use of the extraneous offense evidence during the guilt-innocence phase of trial constituted prosecutorial misconduct. However, as the trial court held the evidence admissible under state law, no prosecutorial misconduct is shown by the State's use of the extraneous evidence at trial. The state court of appeals upheld the admission of the evidence under state law, and this Court may not revisit that determination. *See Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984) (holding that a federal court on habeas review does not sit "as a super state supreme court to review error under state law").

The state courts denied habeas relief under this issue. Petitioner fails to show that the state courts' determination is in conflict with established federal law or is objectively unreasonable, and fails to rebut the presumption of factual correctness with clear and

convincing evidence. *See Miller-El*, 537 U.S. at 330-31, 343; 28 U.S.C. §§ 2254(d)(1), (2), (e)(1). No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## VIII.  *BRADY* VIOLATION

Petitioner contends that the State's forensic testing results revealed no evidence of his DNA or fingerprints at the scene of the offense or on any items recovered at the scene. He claims that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing this information.

To establish a *Brady* violation, a petitioner must show that the State suppressed evidence favorable and material to the defense and that the discovery of the evidence was not the result of a lack of due diligence on the part of the defense. *Id*. at 87. Petitioner's claim is without merit, as his trial counsel was aware of the test results prior to trial.  In her affidavit submitted on state collateral review, trial counsel testifies that:

> I did not believe it was necessary or beneficial to conduct independent scientific testing on the shotgun, shotgun shell, umbrella, sunglasses or fingerprints on the shotgun, and subsequently offer into evidence the results of such testing. It was not necessary or beneficial to do so in regard to any of the aforementioned items because [neither] Marion Robinson's fingerprints nor DNA were found to be present on any of those items by the State. Therefore, without any leads on another suspect, there were no fingerprints or DNA to try to match. Testing just to test would have been futile. And, in regards to those items, there was no link to Marion Robinson which could be argued from the State's testing alone. My trial strategy was to continue to illustrate that if none of these items contained his prints or DNA then how could Marion Robinson be the perpetrator?

\*    \*    \*    \*

> Additionally, Applicant's fingerprints were not found on anything recovered
> at the scene or the surrounding area. This fact was highlighted at trial and was
> strongly argued to suggest someone else was involved in the robbery and
> shooting.

*Ex parte Robinson*, pp. 76-77. Thus, the record does not show that the State suppressed this evidence, and no factual basis supports petitioner's claim for violation of *Brady*.

The state courts denied habeas relief under this issue. Petitioner fails to show that the state courts' determination conflicts with established federal law or is objectively unreasonable, and he fails to rebut the presumption of factual correctness with clear and convincing evidence. *See Miller-El*, 537 U.S. at 330-31, 343; 28 U.S.C. §§ 2254(d)(1), (2), (e)(1). No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

## IX.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Persons convicted of a crime also are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 687-88, 692; *Jones v.*

*Jones*, 163 F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not

mean that counsel will raise every available nonfrivolous ground for appeal. *Evitts*, 469 U.S.

at 394; *West*, 92 F.3d at 1396. Nor will counsel be deficient for failing to press a frivolous

point. Rather, it means, as it does at trial, that counsel performs in a reasonably effective

manner. *Evitts*, 469 U.S. at 394. A reasonable attorney has an obligation to research relevant

facts and law and make informed decisions as to whether avenues will, or will not, prove

fruitful. *Strickland*, 466 U.S. at 690-91.

Petitioner argues that appellate counsel should have raised an issue on appeal

challenging the ineffectiveness of trial counsel. Petitioner states that he requested appellate

counsel to raise the issue, but appellate counsel informed him that she found no supporting

factual basis in the record to challenge trial counsel. *Ex parte Robinson*, p. 56. He further

complains that appellate counsel failed to challenge the sufficiency of the evidence.

In rejecting petitioner's ineffectiveness claim on collateral review, the trial court made

the following relevant findings:

14.   Applicant's appellate counsel made the professional judgment to not
present an appellate allegation challenging the effectiveness of
Applicant's trial counsel[.]

15.   The totality of the representation afforded Applicant was sufficient to
protect his right to reasonably effective assistance of trial counsel in
trial and on direct appeal[.]

*Ex parte Robinson*, p. 128. The Texas Court of Criminal Appeals relied on these findings in denying habeas relief. *Id.*, at cover.

This Court has denied petitioner's claims for ineffective assistance of trial counsel, and agrees with the trial court's findings. As no ineffectiveness of trial counsel has been shown, appellate counsel was not ineffective in not raising the issue on direct appeal. *See Evitts*, 469 U.S. at 394; *West*, 92 F.3d at 1396. Further, petitioner fails to show that, had appellate counsel challenged the sufficiency of the evidence on direct appeal, his conviction would have been reversed. The state appellate court's factual findings in its statement of the facts are sufficient to affirm the conviction under a factual or legal sufficiency challenge to the evidence.[1] Petitioner establishes neither deficient performance nor prejudice, and his claims fail under *Strickland*.

The state courts denied habeas relief on this issue. Petitioner fails to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that it was an unreasonable determination of the facts based on the evidence

---

[1]In a factual sufficiency review, the state appellate court considers whether, after viewing the evidence in a neutral light, a rational trier of fact was justified in finding guilt beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). The appellate court must be cognizant of the fact that a jury has already passed on the facts and must give due deference to the determinations of the jury. *Lancon v. State*, 253 S.W.3d 699, 704-05 (Tex. Crim. App. 2008). A verdict should be set aside only if the evidence supporting the verdict is so weak as to render the verdict clearly wrong or manifestly unjust. *Id.* at 705.

in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this ground.

## X.  CONCLUSION

For the reasons stated above, the Court **GRANTS** respondent's motion for summary judgment (Docket Entry No. 13), **DENIES** petitioner's motion for summary judgment (Docket Entry No. 17), and **DISMISSES** this case with prejudice.  Any and all pending motions are **DENIED AS MOOT**.  A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 10th day of March, 2009.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE